Good morning, gentlemen. Thank you for agreeing to appear in this awkward but necessary manner. We hope you can hear us, and if any problems arise, let me know. This is an unusual – this is a very complex case. It is number 1950646 in the matter of First River Energy, Deutsche Producers. We have read the briefs and the record excerpts. We may not have read the entire record, so we will appreciate those citations when you have them. We're giving each of you several minutes of free time before we ask questions because of the awkwardness of our intervening to ask questions in this format. So you're aware of that, I know. And the only other thing I'd mention is since this is a – this case has a lot of sub-issues, you might want to spend your time on those that you think are most important, but you may get questions about some of the sub-issues. So with that, Mr. Taylor. Thank you, Your Honor. Thank you to the panel. Mark Taylor with Waller-Lanston here on behalf of the appellants, and we certainly appreciate as well the court hearing us in this unusual matter for this important appeal. Now, the fundamental question today is whether to apply the Exxonoma law versus Delaware law on the issue of lien priority as it relates to product and the proceeds of that product, which are sold by oil and gas producers to a first purchaser. And the specific liens dispute that exists today are the liens between those selling parties and the third-party lender to the debtor First River Energy. The statutory overlay for this really starts with section 9.343 of the Texas Uniform Commercial Code, Texas Business and Commerce Code, but I'll refer to it as the Texas UCC, which is a non-standard provision that specifically provides and whose purpose is to make sure the oil and gas producers are paid without having to follow the standard UCC provisions for filing and perfection of liens. The Oklahoma General Statute is very similar. It's at section 52.549 of the Oklahoma General Statutes, and it provides similar protections to those in Texas. Essentially, what you have is a non-possessory security interest in oil and gas production and the resulting proceeds that arises by operation of law. You don't have to have a formal agreement, and you don't have to file anything in the UCC records or the real property records or anything else to perfect that lien. That lien is continuing. It's uninterrupted. That's provided for in both statutes and exists even if the product is commingled with other product somewhere down the road, which is one of the issues that's raised by the appellees in this case. We believe that the Bankruptcy Court determined simply relying upon the Simcrete opinion from the Delaware Bankruptcy Court that the Delaware UCC provisions apply solely because the debtor First River Energy, who had no other ties to Delaware, was incorporated in the state of Delaware. Interpreting that, interpreting the Texas provisions or the Oklahoma provisions to require use of another state's law on perfection and priority undercuts the very purpose for which the statutes were designed. What that would mean is that the protection in the first purchaser's lien would only apply if the first purchaser was incorporated in Texas or in Oklahoma, as the case may be. If it was incorporated anywhere else, the Texas producers, the Oklahoma producers would not get those protections, and it would require that you follow the UCC other provisions and make filings under the UCC, which is precisely what those statutes say you don't need to do. What section 9.343 says that Article 9 applies except to the extent that section 9.343 necessarily displaces other provisions of Article 9, and that's exactly what I'm talking about, and that is if you don't find that these statutes, that 9.4343 displaces other provisions of Article 9, or similarly, if Oklahoma law does not do so, then you're put in the awkward position of having to do the very things that these statutes were designed to have you not do, and that is to have to make certain filings and to have to deal with the laws of other states in protecting your interests. We don't believe that that is the proper result and the proper outcome in this case. We've referred the court to the fact that Delaware, even in its own UCC, granted it's in section 9.320 in an official comment to section 9.320 that deals with purchasing gas free and clear if you buy to the wellhead, it does recognize in that official comment, and the Fifth Circuit has recognized that official comments are a good place to look for statutory interpretation. It recognizes that other states, such as Texas, have non-standard UCC provisions that need to be taken into account and that could alter the case. We believe, in this case, the Appley Deutsche Bank, as agent, even recognized the fact that there was primacy in these lien statute provisions in Texas and Oklahoma law. Specifically, in their loan documents under the credit agreement, they excluded first purchaser product or products subject to first purchaser lien provisions from the borrowing-based calculations. So, they weren't even loaning against the money that would be going to my clients or the product that was provided by my clients. They also provided that first purchaser statute liens are permitted liens under their encumbrance documents. Again, it's a recognition, even by the Appley in this case, that these statutes provide special protections to Texas and Oklahoma producers. So, what is the framework for determining whether or not Delaware Texas law applies? Well, first of all, we believe that simply the wording of the statutes in Texas and you leave these producers unprotected. But if you look at the law, either in the restatement or the case law from this court, it points you to the state with the most significant relationship. There was a case relied upon by the Appley extensively in their response brief, the Fishback and Nursery case, which was decided by this court last year, in which this court said that you look to, in a dispute between non-consensual liens, you know, where you're not dealing with two contractual liens competing against each other, you look to the state with the most significant relationship. That case involved a lien priority dispute between nurseries that were located in several different states that provided product, and they were claiming an agricultural lien. The dispute was between the primacy of the agricultural lien versus the bank lender. Well, Mr. Taylor, I'm familiar with Fishback, and it does say that if you apply Texas law, you apply section six of the restatement, and section six one refers the parties to any statute. So I believe the district court or the bankruptcy court said that that inevitably went to 939, what is it, 302, 9301, the UCC choice in article nine, rather than 9343P. What do you say to that? Well, Your Honor, I agree that's what the court said, but what that does is it makes you, simply for choice of law purposes, go in a circle, and that is where you have to say that we're going to apply Delaware law because you look to Texas law, and it says look to the as a place to look, and then that allows you to completely avoid the non-standard provisions of the Texas UCC. I will certainly admit to the court that the Texas legislature could have worded things better. I've lived in Texas all my life, and that wouldn't be the first time I've seen that in a Texas statute, but what you kind of have to look to, we believe, is what they're really trying to do, and what they're really trying to do in this case, be it Texas or Oklahoma, is provide protection for oil and gas producers and make sure that they don't have to be subject to the laws of other states. Well, I know that. Look at, in Fish Fact, they cite, they refer to 9302, and apparently 9302 governs perfection on agricultural liens for choice of law on agriculture, perfection on agricultural liens. So, it does refer to that series within Article 9. So, don't you have to argue that 9343P supersedes 9301? I think that is what we're arguing, Your Honor, and that's certainly how we get there, to say that this provision is intended to displace the choice of law provisions that would otherwise be applicable under the Texas Uniform Commercial Code, and I certainly recognize in reading the Fish Fact opinion, I haven't dealt with agricultural liens before, but I did look at Fish Fact in Section 9.302 and understand that it does contain a statement as to whose law you're going to apply. I think you get there to the same place, even though the Texas legislature didn't put that in Section 9.343 specifically, by looking at what their intent was and how these sections work together, and the fact that if you read that provision, you're effectively reading that provision out of the Texas UCC, unless you're dealing with a Texas UCC debtor, and certainly we don't believe that's what the Texas legislature intended. Then, if you look solely to the issue that you look at under the restatement or this discussed in Fish Fact and other cases about the most significant relationship, certainly Texas has the most significant relationship or Oklahoma with respect to the Oklahoma production. First River Energy was headquartered in Texas. All of its employees were in Texas. Its operations were in Texas and Oklahoma. The producers were in Texas and had Texas and Oklahoma production. The only connection to Delaware was the fact that First River Energy happened to be incorporated in the state of Delaware. The lender was not even located in Delaware. Is Mr. I suppose your client, I mean, did your clients, some of them file financing statements in Delaware at some point in time? They did. There were a handful of them, Your Honor, that did right before the bankruptcy was filed. Yeah, because we were certainly then were alerted by someone at First River Energy that they were about to file and that they're going to be claims made that they were not count or have priority because there was no filing in Delaware. Also, we were tipped that there was going to be a filing in Delaware. If you look back at the history of this case, as a side note, the producer group actually went in and had a receiver appointed for First River Energy in Texas that was in control of the corporation itself and the corporate powers. As this court has recognized, I don't recall the case side off the top of my head, but when that happens, that means that the corporate entity does not have corporate governance on its own, that that's vested in the receiver. Shortly after that happened, First River Energy filed in Delaware, a bankruptcy in Delaware. We believe it was unauthorized. We then filed a bankruptcy proceeding in Texas and the Delaware Bankruptcy Court, Sue Esponte, I'm sorry, I lost my train of thought, transferred venue to Texas because of the fact that all the connections between the debtor and the producers and the creditors were in Texas and Delaware had nothing to do with it, other than it was fact that it was incorporated in the state of Delaware. Much as we're dealing with here, when you're looking at who has the most significant relationship, the Delaware Court found that this bankruptcy should be held in Texas, much as we believe that the Texas and the Oklahoma General Statute should apply, because they clearly have the most significant relationship and Delaware has only at most a tenuous relationship to the matters at issue in this lawsuit. We believe that that Sim Crude, the Delaware opinion, was a situation where someone was attempting to interpret Texas law and figure out what Texas law meant. Delaware's had a great bankruptcy courts, but they don't have the level of knowledge and effect of oil and gas law that you have in Texas and Oklahoma, and while I understand their reasoning, we believe they simply got it wrong. We don't fault Judge Gargatta for following a Sim Crude opinion because it was the only one out there. We simply believe that he followed an incorrect opinion and also reached the same result, unfortunately, incorrectly. The Applees, in this case, have also contended that we have waived our right to assert our lane because of the effects. I have a question about that, and I'm sure there's an answer, but I didn't look it up yet. The certificate of appealability to the Fifth Circuit covered two issues, and one was 9301 and one was whether section 9301 supersedes 9343. The appeal did not include the potential for a cross appeal, and I just have a procedural question, and if you like, you can give me a direct answer or file a 28-J letter without wasting a lot of our time as to whether we can undertake a cross appeal in a circumstance like that. Well, Your Honor, if it wasn't taken up for appeal and that wasn't an issue on appeal, I don't know how the court could do that. I'm certainly prepared to address that argument, and I would also let the court know that earlier in March, Judge Gargatta actually, in the bankruptcy court, actually made a ruling on a motion for summary judgment that was brought by the debtor as to whether or not that provision was a waiver or a warranty, included that on its clear face, and by its terms, it was a warranty. That's what got me off on this issue, because then we have this curious brief by the debtor that says we adopt all of the agent's briefing, but we want to go farther, and I think they had to be challenging the March 20th ruling, if I'm not mistaken. I don't know if they were challenging that or not. I think that was actually filed. I think that the brief you're referring to was filed before Judge Gargatta made his ruling, but certainly they wanted to address that issue, and they've contended all along that we have warranty as a waiver, much as the appellee in this case has contended, but I certainly don't want to waste the court's time going through an issue that the court doesn't believe is before this court. Well, I don't know. I'm just asking, so if you want to say something in case it is, go ahead. Well, Your Honor, the only thing I want to say is that if you, again, looking at the clear face, just as Judge Gargatta did, it says it's a warranty, and what it's designed to do is make sure that the purchaser from the first purchaser gets that product free and clear of liens. Now, mind you, they're protected both under the Texas statute and the Oklahoma statute if they're a good faith purchaser in the ordinary course of their business, and there would be no lien that attached anyway. The SimCrude opinion dealt with whether or not there was, unlike here where the bank is arguing there was a waiver, where there's a waiver as between an upstream producer and a downstream purchaser, and of course, what we're dealing with here is not an upstream producer and a downstream purchaser. We're dealing with an upstream producer and a lender, and so the SimCrude opinion on that issue we believe would be applicable, but in any event, on the clear face of it, it's a warranty, not a waiver, and if there was a breach of contract, a breach of the warranty, that's the remedy, breach of contract, but here there would be no damages because the debtor got the product and sold it and kept the money, so certainly the debtor is not damaged, and the bank got the money, so they're not damaged either. I see that my time is up, and we'll be happy to answer any further questions either now or in my rebuttal time. Okay, thank you. Mr. Gerber? Can't hear you. Have you got mute on? Try again, please. Can you hear me now, Your Honor? Yes, sir. Thank you. Okay, I apologize. Your Honor, again, Toby Gerber of Norton Rose Fulbright, on behalf of Deutsche Bank Trust Company Americas, the agent for the bank lenders, I want to cover the primary reasons why the bankruptcy court correctly ruled that the agent had perfected security interests in the accounts receivable and cash and deposit accounts, and why the agent's security interests have priorities over the producer's purported security interests. Those primary reasons first are, under summary judgment rules, the producers simply failed to establish the attachment of their security interests to the oil that was sold to the debtors or to the debtors' accounts receivable or to the deposit accounts. Did the district court... Excuse me, my mistake. Okay. In other words, if they've never met their burden under summary judgment to prove that they had a security interest in the first place, they can't meet their burden to show that there's a material fact that we did not have priority. So, in the first instance, under summary judgment rules, the court was correct in finding we had priority second, even assuming that the producers had established attachment of their security interests. They failed to perfect their security interests under Delaware law as required by the applicable choice of law rules. The bankruptcy court correctly identified and then applied choice of law rules with respect to the issues that were before the perfection, the effect of perfection or non-perfection, and priority. That's what 9301 governs. The court correctly found that the agent's security interests needed to be perfected under Delaware law by virtue of the choice of law rules under 9301. What the producers are saying is that they didn't need to perfect under that same 9301 because 9.343, the lien under which they claim, is either not really a lien, it's not really a security interest, it's something akin to a statutory lien, or it's self-contained and necessarily displaced the 9301 provisions. We don't believe that's correct. We don't believe it's correct on the facts. We don't believe it's correct interpretation of 9343, and I'll get to that in more detail in the second. Our third issue is the one you just described, your honor, and that is the bankruptcy court should have but did not find that the producers' free and clear warranty of title to the oil effectively waived all security interests claimed under 9343 of the UCC. The oil was sold as inventory. It was sold free and clear of their liens, and at that point when the debtor took ownership or gained its interest, as the UCC refers to it, the agent's security interest attached and had priority, and no effort was made by the producers in this case to perfect their security interest in the proceeds. We've also presented opposition to the debtor producer's appeals of the dismissal of their affirmative defenses and counterclaims, and we have cross appealed the bankruptcy court's findings regarding the priority of the Oklahoma statute, the attorney fee award of the Oklahoma statute, and with respect to your question about whether or not a cross appeal is permitted, we believe an order was entered in. I'm sorry to say I didn't think about this issue for today's argument, your honor, but we were granted leave to appeal, and those issues, our notice of appeal was brought along with the producers' appeal. So first, with respect to the producers' failure to offer summary judgment evidence, we simply point the court to this court's case in Celotex and other cases involving in a summary judgment situation, if the producers did not submit any competent summary judgment proof as to the elements of attachment and perfection, then they could not prove that they had priority, and they could not disprove that the agent had priority. Well, aren't you crossing that a little far? You're now open to questioning, aren't you? Well, I need to ask you about what's exactly at issue here, because it struck me that right after the bankruptcy was filed, the bankruptcy court ordered payment to the bank of $14.some million to apparently cease the running of interest, even though you're oversecured. Is that a binding agreement that you've waived future accrual of interest? Well, I don't think we are claiming any further accrual of interest, your honor, assuming we don't get, you know, that order does not get reversed. What I'm looking at, I mean, I just want to know what is the realm in which we're arguing, because the facts are that about $27 million in receivables were owed to the producers based on their December sales. That's the way I understood it at the time of bankruptcy, and the bank's lien extended to $13 or $14 million at the time of bankruptcy, although the bank was oversecured. So, are we fighting over the $14 million that has already been paid to the bank, and the producers already have a right, if their liens are good against the debtor, to the additional $13 million? Is that correct? I think that's roughly correct, your honor. First of all, the agreement to pay us, which we asked for in order to unburden the estate of the interest, is subject to, that money is subject to disgorgement if this court were to determine that our security interests were subordinate to the producer's security interests. If we get that money, if we get to keep that money, then we are not seeking additional interest at this time. We're just seeking to protect the payment that was made, and the payment was just really a matter of procedure, and to relieve the estate of the interest that they would have had to pay, which would have further intruded upon the recoveries of subordinate secured creditors, and perhaps unsecured creditors. Right. Okay. Thank you. My next question is on your issue about whether they, quote, proved up their liens. I don't think Judge Gargatta felt he had to rule on that. I think the proof of claim was taken as prima facie evidence, and moreover, you know, to the extent 9343 governs this, it says specifically you don't have to do anything except have an invoice that you sold, and the debtor's not contesting that, right? Well, we did, in fact, contest the validity of the lien. I think the producer's argument is that they did meet their burden of proof because they had, they pointed the court to their proofs of claim, which were filed as secured claims, and said no one objected to that, so it's considered prima facie. We don't object to the amount of the claim for these purposes, but we do object to the validity of the lien, and we did challenge it and file the appropriate type of objection. Bankruptcy rule 7001 paragraph 2 requires challenges to the liens to be filed by an adversary proceeding that is on appeal here today, and at the record at 692-3, we challenged the lien and filed what amounts to, what is the adversary proceeding substitute for a contested matter involving an objection to a claim. The rules say we've got to file an adversary proceeding, which we did, so that evidence required, that challenge made, required the non-movement under a motion for summary judgment to produce competent summary judgment evidence of the lien, and what we're saying is the lien. I know exactly what you're saying, but the question in my mind is when you defend every tittle and jot of Judge Gargatta's extremely thorough and painstaking opinion, now you're, you're, you're arguing that he overlooked what would be the crucial threshold and most decisive and easy issue against you, and so that leads me to think that he didn't overlook it and that he wrote, you know, that it's a decent proof of, a decent proof of claims. Well, I, I, I'm only trying to establish the various reasons why he correctly ruled. I don't think he ignored it, Your Honor. He didn't, he didn't deal with it, but he certainly didn't find, you won't find anywhere in his opinion that the Texas producers had a attached, perfected, and, or attached and perfected security interest under 9343. He did not make that finding, and you won't find it in his ruling, so I appreciate the court's point, though, but I think just simply from our standpoint, it's another ground on which, under which I think Judge Gargatta correctly could have found that we have, we were, should have been granted summary judgment. I do want to get to the producers' points regarding choice of law, though, because I think they are crucial and I think 9343 does, does automatically provide for automatic perfection, okay? It's expressed in the statute. Let me ask, may I ask you, are we talking solely about the Texas producers? Are we ignoring the Oklahoma producers for the purposes of this argument? I think the producers are arguing also with respect to Oklahoma, but, you know, that's on, that's, goes to the cross-appeal issue, Judge Jolly. The judge, Judge Gargatta did find that the Oklahoma producers do have priority. Yeah, I understand that, and that's why it seems like all of the argument is focused on Texas, and I suppose it's because most of the money at issue here would, is results from the Texas producers. That's correct. Okay. And that's where the producers have focused their argument because that's, that's the ruling of which they're most aggrieved. But in arguing their point, they've taken the position that 9343 is something other than a consensual security interest, but the statute says differently. 943A said, and one of the essential elements, as I just discussed, of- Let me follow up just briefly, that, are you conceding then that the Oklahoma producers have priority over the bank? No, Your Honor, we've appealed, I think Judge Jones has indicated that that might not have been ripe for appeal, but we have appealed it and briefed the issue. Okay. So, with respect to 9343, though, it requires, as all security interests do, attachment of a security interest evidenced by an authenticated record. And it actually requires the debtor to sign an agreement or issue a division order or make some other voluntary communication to the interest owner, that would be the producer in this case, recognizing the interest owner's right in the minerals. In other words, in order- What language are you looking at? I'm looking at it. Yeah, 9343A, it's the third sentence, I believe, Judge. Okay. All right. So, you're saying when these producers sold oil and gas, I presume oil, to First River for the month of December, there was no communication whatever? No, I'm saying there was, Your Honor, but I think you have to look at that communication very closely to see if that communication indicated, recognized the interest owner's right, that is, recognized the grant of a security interest in the oil. Okay. And I'll get to that point because it goes to the waiver in just a second. But what I'm trying to suggest to the is that 9343 is neither a lien within the concept, as you pointed out, Judge, in the recent case that you decided. This is not a statutory lien. This is a security interest. It's a consensual security interest. And it falls, it isn't self-contained. It refers to, at 9343P, it refers the rights of any person claiming under this security interest are governed by other provisions of Article 9. And that's where we get into the question of whether or not 9343 necessarily displaces 9301. But what is clear from 9343A and the rest of the statute is, first, it's not a lien. Second, it's a security interest. It's a consensual security interest. And it falls squarely within 9301, which says, as with respect to security interests on issues of perfection, the effect of perfection or non-perfection, which is all of which we have here, and priority, the Texas legislature has said, look to the law of the location of the debtor. In this case, it's Delaware. So when you do your analysis under the restatement, when you look for a statutory directive, this court has repeatedly held that the UCC is the statutory directive. It's the Federal Law of Commerce, if you're going to do that test. Well, wait a minute. Okay, wait a minute. Wait a minute. I mean, this is very interesting, except the statute also refers to this as a lien. And it also says it's automatically created. And if it's not really a lien, if it's not a, quote, lien, but a security agreement, then why does the bank in the credit agreement with the debtor refer to it two times as first purchaser liens? Well, I think if you look at the definition, first purchaser liens is a defined term under the credit agreement, Your Honor. And it's more than just 9343. I understand that. And I'm looking at that. I'm looking at your record excerpts. Unfortunately, I don't have the entire credit agreement before me. Record at looks like 733 in the Federal Appeals Court. And the borrowing base excludes 100% of the first purchaser lien amount. And then later on, it refers to permitted liens. Permitted liens at page 821 include first purchaser liens. And then it says a first purchaser lien as defined in Texas Business Commerce and Code Section 9343, comparable laws of the states of Oklahoma. Yes, Your Honor. And two things about that. Number one, we didn't subordinate. The banks did not subordinate their position. They merely just used that. It seems to me that you're pressing your argument entirely too far. Your argument, if accepted in toto, renders 9343 useless and a nullity for the purposes for which it was passed. And that is not the job of this court in construing statutes. To say that this is merely a security interest and therefore it wasn't perfected, that it was weighed by the standard transactional set of contract terms in the industry, means that the people who pressed this before the Texas legislature must have been totally legally ignorant. And I just think you've got to acknowledge at some level that they had a security interest. I'm not saying that a properly perfected security interest would not be effective. What I'm saying is that the Texas legislature promulgated Article 9 over a period of time. 9343 dates back to 1983. Things were different in 1983. Among them, the choice of law for perfection of security interests in this type of collateral may have been different. In 2001, and I'm sure the court is aware of this, we've all lived through it. In 2001, the UCC was changed with respect to a lot of reasons, but the Texas legislature determined that in order to have an effective, efficient commercial law of the state of Texas, that certain changes had to be made. One of them, very important one, was 9301 in telling parties, creditors, how they find out if the collateral they wish to lend against is subject to liens. And what the Texas legislature said, and so did the Delaware legislature, in fact, so did all 50 states say, but look for purposes of perfection, non-perfection priority, same issues we have here, look to the law of the state of where the debtor is located, and they defined location in the case of an organized entity where that debtor is incorporated. So these producers who sold their oil in 2017, 2018, knew what the rules were. Those rules had been in effect since 2001, and they certainly knew since 2010 that there was some question about whether or not under 9343, it was sufficient to just rely on a statute that was written in 1983, and it had not been changed at the time of the Sunkroot case, it had not been changed at the time of the first River Energy case that were before. So they knew that, they were guided by every state legislature's intention to say, this is how you do it, this is how we can best promote commercial transactions in the state of Texas, and really, as it turns out, throughout the country. So we don't... Your time has expired. I apologize. No, no, I just have one further question, and that is that their position is that if you accept this argument that 9301 governs, then this 9343P creates a dramatic distinction between the rights of and purchasers incorporated elsewhere. And I say no. I say that's a false, I say that's a, it's a false argument. If 9301 governs, it's the law of incorporation, so if they're incorporated in Texas. And all, but under 9301, if they're incorporated in a different state, all a producer has to do is follow the rules that the Texas legislature told him to follow. And then I have one... Which is to record a UCC financing statement in the state of the incorporation. I understand what you're saying there, but then the other question, the other point I would make is, what does this, what does this language necessarily displaces those provisions mean? If we go back, I think it's McCulloch versus Maryland talks about the scope of the necessary improper clause, and it's pretty generous about what's necessary. Well, necessary displacement is language that was adopted by the Texas legislature in 9343. So let's see what the about what constitutes displacement, much less necessary displacement. Since 1983, they've amended all sorts of provisions of the Article 9, including, for example, the purchase money security interest. And in the purchase money security interest, not statute 93.24, the Texas 9343 does not have to give the notice that's required for all other purchase money security interests and inventory. So they knew how to displace something, okay? Look then at 9301 adopted in 2001, no such change. And at the same time, they adopted 9301, which incidentally can't be varied by contract under 1301. But at the time they adopted 9301, they changed the numbering of 9343. They changed the references to the purchase money security interest carve out. They changed all those things. They knew how to displace things. And 9301 is absolutely silent about an exception for 9343. So what, if anything, does 9343p necessarily displace? Well, I don't think anything else other than the express changes that the Texas legislature made in the statute. I don't think, and this was one of the things we called to the court's that the producers have not pointed to any such provision. They've claimed that it displaces 9301, but they've not claimed that any other provision of the of article 9 is displaced. Okay, well, we have your argument. Thank you. Mr. Taylor, rebuttal. Yes, I'll go down the rabbit hole very quickly and then get out on this issue of the extent of the lien and the proof. Three responses to that. First, the bankruptcy court didn't rule on that and certainly didn't rule that we hadn't proved up that we had product that was not paid for. Second of all, we did, as Judge Jones noted, we had filed proofs of claim. There was no objection. The adversary proceeding was a matter of interpreting the lien priority, not the fact that we had unpaid product. And third, the bank's own affidavit filed in this case from Deborah Cryack, who was the president of First River Energy, indicated that First River Energy had not paid the producers for the December 2017 production, and that's at her affidavit at the record 1187 through 1189. Second issue was this issue of Oklahoma law, and no, Judge Jolly, certainly we're not trying to ignore Oklahoma law, and I know that we mentioned it and talked about it. It is a much smaller portion. It's about a million three-ish of the amount, so it's a smaller amount, and we think Judge Gargatta's opinion was very clear that you didn't have to go through this analysis of which version of the UCC to apply with respect to Oklahoma, since Oklahoma's first purchaser lien statute was contained in its general statutes and not in the UCC, and therefore that analysis was not necessary. The last thing I wanted to address was what the court was discussing with Mr. Gerber at the end, and that is what does section 9.343 mean? Mr. Gerber suggested that the producers could simply follow the rules to record UCC financing statements. I think I wrote that down correctly. The problem with that is that if you have a UCC financing statement, if a producer comes in and signs an oil and gas purchase contract after the bank lien is in place and simply filing UCC1 doesn't provide any protection to the producers, exactly what section 9.343 is designed to do. You don't have to file a UCC. You're given what is effectively a purchase money security interest, and you do it without having to do anything. As Judge Jones, as you noted, and as we discussed in my argument earlier, if section 9.343 does not necessarily display section 9.301 in the choice of law, then the only parties protected are parties that deal with first purchasers who are incorporated in the state of Texas, and that doesn't seem to make sense, and it renders the rest of these provisions meaningless with respect to any other production. But it does make sense, does it not, when it's juxtaposed to the Oklahoma law. The Texas law is juxtaposed to the Oklahoma law, and the conclusion of the bankruptcy judge appears to be that if Texas amended their law in the fashion of Oklahoma law, then all would be resolved, and the fault here is in the legislature and not in the law. And I certainly wouldn't argue with your honor that, again, the Texas legislature could be a lot clearer. I would suggest, though, that these provisions, we believe, are clear on their face and provide the protections to the oil and gas producers in Texas, and the fact that the Texas legislature has not changed them doesn't mean that they, that there's a need to change them. They may feel that they are, they were doing everything they needed to do to protect Texas producers, and certainly we believe that section 9.343 provides those producers. The bankruptcy judge made a fairly compelling case that it does need to be changed. And I certainly, as I said, I certainly agree with you and with the bankruptcy judge that it could be clearer, and I won't certainly argue that and try to say it couldn't be clearer. That doesn't mean that the effect of it isn't the same, and the effect of it is, whether it's in the UCC or in a general statute elsewhere, that this was a non-standard provision specifically designed to make sure that the Texas oil and gas producers did not have to do the other things that are necessary under the Texas Uniform Commercial Code to protect and perfect their interest. I think counsel Mr. Gerber indicated that, well, the producers haven't shown that anything else in the UCC has been necessarily displaced by section 9.343, then that's simply incorrect. The entire scheme of having to file something to protect your interest, of having to trace proceeds, of having to identify proceeds, all of that has been displaced by section 9.343. And so it is not a leap then to say that the provisions that relate to the choice of law under section 9.301 have likewise been displaced because otherwise, again, you're reading a statute meaningless by taking that approach and making it meaningless as to most of the oil and gas transactions or many of the oil and gas transactions that occur in the state of Texas because so many companies are incorporated in the state of Delaware. So, your honors, my time is up. Thank you for hearing me today. If you have any other questions, I'd be happy to answer them. But fundamentally, we believe that the rights that are granted to the Oklahoma producers are clear and adopting a result that applies another state's law to this very specific non-standard provision would gut the statute. Thank you very much for your time today. Thank you, gentlemen.